# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**LISA POWERS**                                   **CIVIL ACTION**

**VERSUS**                                        **12-448-JJB-RLB**

**COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION**

---

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1)(C), you have **14 days** after being served with the attached Report and Recommendation to file written objections to the Magistrate's proposed findings of fact, conclusions of law and recommendations. Absent plain error, any failure to file written objections within 14 days of service will bar you from attacking on appeal the proposed factual findings, legal conclusions and recommendations that were not objected to and accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on February 5, 2014.

**RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**LISA POWERS**                                    **CIVIL ACTION**

**VERSUS**                                         **12-448-JJB-RLB**

**COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION**

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff, Lisa Powers (Plaintiff), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for a Period of Disability and Disability Insurance Benefits (DIB) under Title II and Supplemental Security Income (SSI) under Title XVI of the Social Security Act. (R. Doc. 1).[1]  For the reasons assigned below, the Court **RECOMMENDS** that the decision of the Commissioner be **VACATED** and Plaintiff's appeal **REMANDED** for further administrative proceedings consistent with this Report and Recommendation.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on July 31, 2009 (Tr. 136-150) alleging a disability onset date of March 20, 2007 (Tr. 136).  The date of last insured for purposes of disability insurance benefits was December 31, 2007. (Tr. 46, 82).  After Plaintiff's claim was initially denied (Tr. 82-83), she requested a hearing before an Administrative Law Judge (ALJ) (Tr. 94), which was held on December 20, 2010 (Tr. 61-81).  On February 25, 2011 the ALJ issued an unfavorable decision denying Plaintiff's applications for DIB and SSI benefits.

---

[1] References to documents filed in this case are designated by: (R. Doc. [docket entry number(s)] at [page number(s)]).  Reference to the record of administrative proceedings filed in this case is designated by: (Tr. [page number(s)]).

(Tr. 43-45).  After the Appeals Council denied Plaintiff's request for review (Tr. 41) on June 4, 2012 (Tr. 4-6), the ALJ's decision became the final decision of the Commissioner for purposes of judicial review. *See* 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . .").  The ALJ's final decision is now ripe for review under 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)).  The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted).

Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds

2

that the evidence preponderates against the Commissioner's decision. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.     ALJ'S DETERMINATION

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of

sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

In the ALJ's decision, the ALJ first found that Plaintiff met the insured status requirements of the Act and that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of March 20, 2007. (Tr. 48). At the second step, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spine, migraines, sleep disorder and chronic low back pain. (Tr. 48). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments, specifically Listing 1.04. (Tr. 50).

Prior to the fourth step, the ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform the full range of light work, as defined in 20 C.F.R. § 404.1567(b). (Tr. 50). The ALJ then determined that Plaintiff's complaints of disabling symptoms and limitations were not credible to the extent alleged. (Tr. 50-51). At the fourth step, the ALJ found that Plaintiff was able to perform her past relevant work as a medical assistant because none of the functions associated with that work exceed the limitations of Plaintiff's RFC. (Tr. 54). The ALJ concluded its analysis at step four after finding Plaintiff could perform her past relevant

work. (Tr. 54).  Ultimately, the ALJ concluded that Plaintiff had not been under a disability, as defined by the Social Security Act, at any time from the alleged onset date through the date of the decision. (Tr. 54).

The ALJ's decision does not contain any separate analysis for Plaintiff's application for a Period of Disability and Disability Insurance Benefits under Title II versus Plaintiff's application for Supplemental Security Income under Title XVI of the Social Security Act.  The relevant adjudicated periods for purposes of determining Plaintiff's disability are different for each application.  The DIB application's adjudicated period began on Plaintiff's March 20, 2007 alleged onset date and ended on December 31, 2007 — the date last insured. 42 U.S.C. § 416(i)(2)(A)-(C) (defining "period of disability" and explaining when it begins and ends); 42 U.S.C. § 423(a)-(c) (discussing disability insurance benefits payments and defining "insured status"); *Ivy v. Sullivan*, 898 F.2d 1045, 1049 (5th Cir. 1990) ("A claimant is eligible for [disability insurance] benefits only if the onset of the qualifying medical impairment began on or before the date the claimant was last insured.").  The adjudicated period for Plaintiff's SSI application ran from the filing of her July 23, 2009 application until the ALJ's February 25, 2011 decision. 42 U.S.C. § 1382(c).

Nonetheless, the ALJ should develop the claimant's complete medical history and consider all of the record evidence when determining disability — regardless of the type of application filed. *See, e.g.*, 20 C.F.R. §§ 404.1520(a)(3) (ALJ must "consider all evidence in [claimant's] case record" to determine eligibility for DIB), 404.1512(d) (generally complete medical history should at least include the claimant's medical source's records "covering the 12 months preceding the" DIB application); 20 C.F.R. §§ 416.920(a)(3) (ALJ must "consider all evidence in [claimant's] case record" to determine eligibility for SSI benefits), 416.912(d)

(generally complete medical history should at least include the claimant's medical source's records "covering at least the 12 months preceding the" SSI application). The record for an SSI application will typically include medical evidence from the alleged onset to the date of the decision, as it did in this case. For DIB applications, the ALJ may consider subsequent medical findings and diagnoses obtained after the date last insured. If these subsequent records are available, they may be relevant to determining a disability's onset either on or before the date last insured. *See, e.g.*, *Lucky v. Astrue*, 458 F. App'x 322, 326 (5th Cir. 2011) ("Subsequent medical evidence is relevant because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status.") (quoting *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000); *Likes v. Challahan*, 112 F.3d 189, 191 (5th Cir. 1997) ("Retrospective medical diagnoses constitute relevant evidence" of disability onset prior to the date last insured when "corroborated by lay evidence relating back to the claimed period of disability.").

In this case Plaintiff's administrative record contains evidence from her alleged onset through the date of the decision. Regardless of the application, the ALJ was required to consider Plaintiff's complete medical history and the record as a whole. And so, any improper consideration of evidence by the ALJ could affect the outcome of both applications.

## IV.   PLAINTIFF'S ALLEGATIONS OF ERROR AND THE COMMISSIONER'S RESPONSE

Plaintiff alleges that the ALJ erred in denying her application for disability benefits. First, Plaintiff argues that the ALJ's "RFC and credibility" assessments were erroneous. (R. Doc. 8 at 8). According to Plaintiff, the "ALJ improperly accepted the conclusory opinion of a non-examining physician over the opinions of treating and examining physicians." (R. Doc. 8 at 8). (R. Doc. 8 at 8). Finally, Plaintiff claims the ALJ's "rationale" cannot be supported by substantial evidence because it "includes confusing and contradictory findings."

The Commissioner responds that the record contains substantial evidence to support "the ALJ's finding that Plaintiff had the RFC to perform the full range of light work." (R. Doc. 10 at 6).  The Commissioner suggests the ALJ appropriately considered Plaintiff's daily activities when assessing her credibility. (R. Doc. 10 at 13).  The ALJ then correctly determined "that Plaintiff's subjective statements regarding the severity and degree of her limitations were not fully credible." (R. Doc. 10 at 17).  Finally, the Commissioner urges that the ALJ acted within its discretion to weigh evidence and resolve the conflicting medical opinions presented. (R. Doc. 10 at 14).

**V.    ANALYSIS**

The ALJ is responsible for determining a claimant's residual functional capacity (RFC). *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  In making this determination the ALJ must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the claimant's ability, despite any physical and mental limitations. *Loza*, 219 F.3d at 393 ("The inquiry here is whether the record, read as a whole, yields such evidence . . . .").  However, the ALJ may not establish physical limitations or lack of limitations without the support of medical evidence. *Patterson v. Astrue*, No. 08-13, 2008 WL 5104746, at *4 (N.D. Miss. Dec. 1, 2008).  "The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law or judging matters entrusted to experts." *Nyugen v. Chater*, 172 F .3d 31, 35 (1st Cir. 1999) (citation omitted).  Ultimately, the ALJ must "consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza*, 219 F.3d at 393.

The ALJ determined that Plaintiff was capable of performing the full range of light work, without additional restrictions or limitations. (Tr. 50)  According to the regulations, light work involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

The ALJ's evaluation of Plaintiff's RFC begins with a review of Plaintiff's medical records. (Tr. 51-54)  First the ALJ discussed the records of Plaintiff's "treating physician," Dr. Charles Tessier. (Tr. 51)  Dr. Tessier treated Plaintiff continuously since 2005 for chronic low back pain, migraines, asthma, insomnia and anxiety. (Tr. 51)  Reviewing Dr. Tessier's medical records, the ALJ notes that Plaintiff consistently exhibited positive straight leg raising tests on the right in 2006, 2007, 2008, 2009 and 2010 (Tr. 51, 362, 422, 457, 592, 596, 598).  The ALJ then notes that Dr. Tessier's records indicate Plaintiff had numbness in her legs and feet and weakness in her legs, which have contributed to multiple falls. (Tr. 51, 362, 397).  Dr. Tessier also opined in Plaintiff's August 2009 discharge application for the Federal Family Education Loan Program that Plaintiff was totally disabled as of April 24, 2007 due to chronic neck and back pain and severe depression and was capable of lifting no more than 20 pounds. (Tr. 51, 358).[2]  The ALJ does not mention, however, that the continuation page of Dr. Tessier's notes

---

[2] This report by Dr. Tessier indicates that the Plaintiff has a "date disabled" of "4/24/07" and explains the diagnoses of her disabling conditions as well as the resulting limitations noted that explain her disability.  This disabled date of April 24, 2007 falls within the adjudicated period for Plaintiff's DIB application.  Indeed, it appears that the only records dated during this timeframe that go to the Plaintiff's physical condition are from Dr. Tessier.  As noted above, the ALJ provided no separate analysis in his opinion for the adjudicated period for Plaintiff's DIB or SSI application and it is unclear what evidence he considered in assessing either application.  Likewise, the ALJ's rejection of Dr. Tessier's medical opinions is not limited to any such adjudicated period.  Because the Regulations

finds that Plaintiff's limitations include that she cannot lift any weight, can only walk for 30 minutes, stand for 30 – 60 minutes and sit for 30 minutes before needing to change positions. (Tr. 359). In December of 2010, Dr. Tessier advised that surgery was recommended for Plaintiff's back condition. (Tr. 51, 231). Additionally, Plaintiff's migraines, which Dr. Tessier found were a result of degenerative changes in Plaintiff's spine, were occurring 3 times per week. (Tr. 51, 231). Dr. Tessier felt Plaintiff would be incapable of working while suffering from a migraine and that if she were to work, she should only engage in very sedentary and part-time work that allowed her to take frequent breaks. (Tr. 51, 231).

The ALJ also provided an overview of various other treating and examining physicians, including Dr. Michael Burdine. (Tr. 53). Dr. Michael Burdine diagnosed Plaintiff with cervical spondylitis, COPD, herniated cervical intervertebral disc disease, lumbar spondylosis and radiculitis. (Tr. 604-608). During his treatment of Plaintiff in November of 2010, he performed a lumbar nerve root block and administered an epidural steroid injection at L4-5, in an effort to alleviate Plaintiff's back pain. (Tr. 604-608, 610, 629). On November 1, 2010 Dr. Burdine determined that Plaintiff was limited to lifting 15 pounds and could not bend at the waist or engage in prolonged activities, as she required frequent breaks. (Tr. 629). Dr. Burdine's November 2010 medical records note that Plaintiff had a positive straight leg raising test on the right. (Tr. 604-08).

Plaintiff was sent for a consultative psychological examination by Dr. Marc Zimmerman in October of 2009. (Tr. 53, 503-36). During his October 2009 examination of Plaintiff, Dr. Zimmerman noted that Plaintiff had a history of depressive disorder and posttraumatic stress disorder, with no signs or symptoms upon examination. (Tr. 505).

---

require consideration of the entire record for both DIB and SSI applications, the ALJ's rejection of Dr. Tessier's opinion affected the outcome of both applications.

The state agency Medical Consultant, Dr. Charles Lee, also reviewed Plaintiff's medical files on record as of September 15, 2009. (Tr. 502).  While Dr. Lee did not actually examine Plaintiff, Dr. Lee ultimately concluded that Plaintiff was capable of occasionally lifting 20 pounds, frequently lifting 10 pounds. (Tr. 496).  In an 8 hour workday, Dr. Lee found that Plaintiff could stand or walk for 6 hours and sit for 6 hours. (Tr. 496).  Dr. Lee determined that Plaintiff should never climb ladders, ropes or scaffolds, should only occasionally kneel, crouch and crawl (Tr. 497) and was limited in her ability to reach in all directions, including overhead. (Tr. 498).  Dr. Lee also determined that Plaintiff should avoid all exposure to fumes, odors, dusts, gases, poor ventilation, etc., due to her asthma. (Tr. 499).[3]

After reviewing the medical evidence, the ALJ explained his RFC assessment of Plaintiff. Despite the limitations contained in her medical records, the ALJ determined Plaintiff was capable of performing the full range of light work without any additional restrictions.  The ALJ's analysis explains the weight given to Plaintiff's treating, examining and non-examining physicians:

> As for the opinion evidence, significant weight was given to the opinions of the state agency experts and Dr. Burdine.  There is no medical source statement from the claimant's treating physician Dr. Tessier.  Although Dr. Burdine opined the claimant was more limited than the above residual functional capacity, it must be noted that he had not treated the claimant on a long-term basis.  The longitudinal evidence of record, though it does reveal the claimant has limitations from her impairments, does not support the extreme limitations opined by Dr. Burdine. The opinion of Dr. Zimmerman is given great weight.  Dr. Zimmerman was an examining physician and his opinion is consistent with the longitudinal evidence of record.
>
> In sum, the above residual functional capacity assessment is supported by the opinions of the state agency experts and Dr. Zimmerman . . . .

---

[3] The ALJ never mentioned Dr. Lee by name but it appears that Dr. Lee's finding are among those given "significant weight" as a "state agency" expert. (Tr. 53).

(Tr. 53-54).[4]

Plaintiff first suggests that the ALJ erred by ignoring, without reason, the medical opinion of her treating physician, Dr. Charles Tessier. (R. Doc. 8 at 9).  Dr. Tessier treated Plaintiff on a regular basis beginning in 2005 and continuing through the ALJ's February 25, 2011 decision. (Tr. 198, 231, 357-491, 587-601, 667-669).  Generally, the "opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also* 20 C.F.R. § 404.1527(c)(1) (examining physician opinion given more weight than non-examining physician) and (c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely . . . most able to provide a detailed, longitudinal picture of your medical impairment(s)").  "Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton*, 209 F.3d at 453.[5]

The ALJ did not provide such a "detailed analysis" and the Commissioner does not argue otherwise.  However, the ALJ is not required to consider each of the six factors set out in *Newton* when "'there is competing first-hand medical evidence and the ALJ finds as a factual matter that

---

[4] A Medical Source Statement (MSS) is a medical source's opinion "about an individual's physical or mental abilities to perform work-related activities on a sustained basis" despite his or her impairments. SSR 96-5P, 1996 WL 374183, at *4 (July 2, 1996); *see also* 20 C.F.R. §404.1513(b)-(c) (discussing medical source opinions). An MSS must be submitted by an "acceptable medical source" and based on the source's "own knowledge" and "medical findings." SSR 96-5P, 1996 WL 374183, at *4 (in the MSS contexts, acceptable medical sources include "treating sources and consultative examiners"); *see also* 20 C.F.R. § 404.1513(a)(1)-(5) (acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists).

[5] Those criteria provide that the ALJ consider: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence supporting the opinion; (4) consistency of the treating physician's opinion with the record as a whole; (5) whether the opinion is that of a specialist; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2).

one doctor's opinion is more well-founded than another.'" *Walker v. Barnhart*, 158 F. App'x 534, 535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458). Thus, the ALJ's decision to reject a treating specialist's opinion must be supported by substantial, contradictory, first-hand evidence from another physician. If the decision is so supported, the ALJ is "not required to go through all six steps in *Newton*." *Cain v. Barnhart*, 193 F. App'x 357, 360 (5th Cir. 2006) (citing *Newton*, 209 F.3d at 452, 458; *Walker*, 158 F. App'x at 534). Ultimately, the ALJ is "not bound by the opinions of plaintiff's treating physicians;" however, he is "required to set forth some basis for rejecting these opinions." *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *see also Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (An ALJ is free to discredit the opinion of a treating physician where the evidence supports a contrary conclusion.).

In assigning weight to the opinion evidence, the ALJ does not indicate what weight, if any, he assigned to Dr. Tessier. (Tr. 53). Because the RFC greatly exceeds Dr. Tessier's limitations, it can reasonably be inferred that the ALJ chose to discount the opinion significantly. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456; *see also Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999). The Commissioner argues that the "ALJ properly rejected Dr. Tessier's opinion because the record evidence supported a contrary conclusion." (R. Doc. 10 at 15). Despite the Commissioner's assertions, the Court "may not accept appellate counsel's post hoc rationalizations for agency action." *Burlington Truck Lines v. United States,* 371 U.S. 156, 168 (1962). "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton,* 209 F.3d at 455.

The decision does provide a review of Dr. Tessier's opinion; however, this does not negate the ALJ's failure to offer any definitive reason for not assigning weight to the opinion. *See Loza*, 219 F.3d at 395 ("The ALJ cannot reject a medical opinion without an explanation."). The ALJ did not compare the opinion of Dr. Tessier to the opinions of Dr. Lee or Dr. Burdine — both given "significant weight" — nor did he make any finding "as a factual matter that one doctor's opinion is more well-founded than another." *Newton*, 209 F.3d at 458.  The ALJ did not address any conflicts between Dr. Tessier's opinion and those of other physicians and did not provide any reason why he accepted other opinions over Dr. Tessier's — other than Dr. Tessier's failure to provide a medical source statement.[6]  There is simply no analysis, under *Newton* or otherwise, for the Court to consider. *See Shelman*, 821 F.2d at 320-21 ("While the opinion of a treating physician is entitled to substantial deference only if it is supported by sufficient medical data, the ALJ made no finding that the opinions of plaintiff's treating physicians were not supported by sufficient medical data.") (citation omitted).

Our review also makes it clear that the ALJ did not reject the opinion of Dr. Tessier wholly in favor of Dr. Burdine's, despite Burdine's opinion receiving "significant" weight.   Dr. Burdine restricted Plaintiff to lifting no more than 15 pounds, no bending, no prolonged activities and advised that Plaintiff would require frequent breaks if working. (Tr. 53, 629). This is not consistent with the ALJ's RFC determination.  Beyond that, the actual weight accorded to Dr. Burdine's opinion is contradictory and unclear.  The ALJ began by placing "significant weight" on Dr. Burdine's opinion. (Tr. 53).  Immediately after, the ALJ explained that Dr. Burdine "opined the claimant was more limited than the above referenced residual functional capacity."

---

[6] Moreover, if Dr. Tessier's failure to provide a medical source statement is the ALJ's reason for ignoring his opinion, the ALJ's allocation of "significant weight" to Dr. Burdine is inconsistent with that rationale.  Dr. Burdine also did not provide a medical source statement, yet the ALJ determines that his opinion should be afforded "significant weight."

(Tr. 53).  The ALJ reasoned that: (1) "the longitudinal evidence of record, though it does reveal the claimant has limitations from her impairments, does not support the extreme limitations opined by Dr. Burdine;" and (2) Dr. Burdine "had not treated the claimant on a long-term basis." (Tr. 53).

The ALJ's reason for discounting Dr. Burdine's opinion is inconsistent with his previous rationale.  Despite discrediting Dr. Burdine because he did not treat Plaintiff on a long-term basis, the ALJ gives "significant" weight to a non-examining state agency expert, Dr. Lee, and gives no weight to Dr. Tessier, Plaintiff's treating physician who examined her continuously for over five years.  Just as confusing is the ALJ's reference to "the longitudinal evidence of record," without indicating what evidence, if any, actually contradicts Dr. Burdine's opinion, much less why that evidence is reliable.  *See Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) ("ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions").  The ALJ's conclusory statements are insufficient for the Court to determine whether his decision is supported by substantial evidence. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 1120 (3d Cir. 2000) (remanding because the ALJ's "conclusory statement" was "beyond meaningful judicial review").

While the ALJ discounted Plaintiff's treating physicians, "significant weight" was given to the state agency medical consultants, Dr. Marc Zimmerman and Dr. Charles Lee.  Dr. Zimmerman is a "Medical Psychologist" and provided diagnostic impressions regarding Plaintiff's mental condition. (Tr. 505).  Dr. Lee provided the Commissioner with a Residual Functional Capacity Assessment of Plaintiff. (Tr. 495-502).  In forming his opinion, Dr. Lee did not examine Plaintiff.  Instead, he conducted a review of Plaintiff's medical records provided to the Commissioner as of September 15, 2009. (Tr. 502).  Dr. Lee determined that Plaintiff was

capable of lifting 20 pounds occasionally and 10 pounds frequently. (Tr. 496).  Dr. Lee also found that Plaintiff could both stand and sit for up to 6 hours in an 8 hour work-day. (Tr. 496). He also placed manipulative and environmental limitations on Plaintiff's ability to work. (Tr. 498-99).

According to Plaintiff, the ALJ's decision lacks substantial evidence because it "wholly accept[s]" and relies on the opinion of Dr. Lee.  While it does seem the ALJ gave significant weight to Dr. Lee's restrictions on Plaintiff's ability to lift, sit, stand and walk, which were consistent with light work, other limitations set forth by Dr. Lee were not incorporated into the RFC.  The Fifth Circuit has noted that "an ALJ may properly rely on a non-examining physician's assessment when . . . those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

In this case, Dr. Lee's RFC Assessment fails to reference or particularly mention any of the evidence he reviewed in forming his opinion. (Tr. 495-502).  Nonetheless, even if he reviewed all of the available evidence, it would only include those medical reports obtained by the Commissioner prior to September 15, 2009 — the date of his RFC assessment. (Tr. 502).  Dr. Lee's opinion rendered almost two year before the decision and without access to the considerable medical findings of 2010, therefore, could not be based upon a "careful evaluation of the medical evidence," as required by the Fifth Circuit. *Villa*, 895 F.2d at 1024.  As a result, Dr. Lee's opinion also conflicts with the opinions of Plaintiff's treating and examining physicians and the record as a whole.

Neither of Plaintiff's treating physicians, Drs. Burdine and Tessier, opined that her impairments allowed her to engage in gainful activity consistent with the exertional requirements

15

of light work as Dr. Lee suggested.[7]  The record further demonstrates that Plaintiff's conditions continued to deteriorate during 2010 — as indicated by Dr. Burdine (Tr. 604-608, 610, 629), Dr. Tessier (Tr. 231), Dr. Jason Smith (Tr. 631-634), Dr. Lawrence Glorioso (Tr. 599-601), and Dr. Gary Dennis (581-582).  After Dr. Lee's September 2009 review of Plaintiff's medical records, an orthopedic consult recommended that Plaintiff undergo a cervical fusion. (Tr. 231).  Epidural steroids were also recommended and administered to Plaintiff's back, but did not provide long-term relief of her symptoms. (Tr. 231, 610).  Plaintiff began having migraines as often as three times a week, which Dr. Tessier believed were a result of degenerative changes in Plaintiff's spine. (Tr. 231).  Dr. Tessier determined that Plaintiff could only work part-time, roughly 15 hours per week, and not at all while experiencing a migraine. (Tr. 231).  In June of 2010, Dr. Tessier also indicated that Plaintiff's neck and lower back pain were increasing. (Tr. 598).

On November 24, 2010, Dr. Burdine noted Plaintiff was experiencing extremity weakness, parasthesia or numbness, tingling and headaches. (Tr. 606).  Dr. Burdine also indicates that Plaintiff suffered from lumbar and cervical pain accompanied by weakness, stiffness, muscle pain, cramps and spasms. (Tr. 606).  Dr. Jason Smith's records indicate that his October 6, 2010 examination of Plaintiff revealed limited motion of the cervical spine with lateral rotations and limited range of motion of the lumbar spine. (Tr. 631-634).  An MRI of Plaintiff's lumbar spine also demonstrated multi-level disc desiccation and evidence of foraminal disc herniation at L4-5, which causes some compromise at the L4 nerve root within her foramen on the right side. (Tr. 633).  Dr. Smith's exam notes from February 23, 2011 stated: "I do think

---

[7] On November 24, 2010, Dr. Burdine indicated Plaintiff could only lift 15 pounds, should not engage in prolonged activities, should not bend and must take frequent breaks. (Tr. 629).  On December 9, 2010, Dr. Tessier advised that Plaintiff is only capable of very sedentary work for no more than 15 hours a week, required frequent breaks and would be incapacitated up to three times per week due to migraines. (Tr. 231).

that the foraminal disk herniation is at least a contributor to much of her pain especially the leg, buttock and hip pain." (Tr. 684).

In November of 2009, Dr. Dennis' records discuss Plaintiff reporting severe back and neck pain radiating to her right lower extremity, numbness in her right lower extremity, hand weakness and difficulty opening her jaw. (Tr. 581-582).  Upon examination, Dr. Dennis found Plaintiff had a diminished range of motion in her back and right lower extremity. (Tr. 582).  In February of 2010, Dr. Dennis noted that Plaintiff presented with cervical and lumbar radiculopathy, cluster migraines and that Plaintiff's lower back and neck pain had worsened. (Tr. 577-578).

An MRI conducted by Dr. Lawrence Glorioso on August 17, 2010 showed "hypertrophic changes of the uncontrovertebral joints and facet joints of the cervical spine with compromise of the left C5-C6 neural foramina.  Correlation with left C6 nerve root symptomology is suggested." (Tr. 599).  The MRI also demonstrated "desiccation of the intervertebral disc" and "diminished" space between discs at C5-C6 and C6-C7. (Tr. 600).  "[P]rominent posterior bulging of the intervertebral disc" and an "annulus fibrosus tear" were also found at C5-C6. (Tr. 600).  "Subligamentous herniation of the C6-C7 vertebral disc" was also indicated. (Tr. 600).  The MRI also showed cervical facet arthrosis and straightening of the cervical lordosis indicating a pattern of muscle spasm. (Tr. 601).  Finally, Plaintiff reports that her symptoms of back pain began in 2006, following a motor vehicle accident. (Tr. 604, 747).  In May of 2010, Plaintiff was involved in a second motor vehicle accident.  Following the second accident, Plaintiff complained of increased pain in her neck and shoulders. (Tr. 637, 747).

Because Plaintiff's spinal conditions — degenerative disc disease, spondylosis, radiculopathy[8] — are degenerative in nature, her most recent 2010 medical records are more indicative of her functional limitations than those obtained in 2009. *See, e.g.*, *McGuire v. Little Bill Coal Co*., 14 F.3d 601, at*3 (6th Cir. 1994) ("because pneumoconiosis is progressive, the ALJ is entitled to give greater weight to the most recent medical opinions, x-rays, and test results than to earlier, conflicting evidence."); *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir. 1978) ("The degenerative nature of Bastien's condition is an important factor to be weighed."); *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985) ("Because Stone's condition was progressively deteriorating, the most recent medical report is the most probative. Earlier medical evaluations . . . do not constitute substantial evidence . . . The determinations of the Social Security medical advisors, made without examining Stone or reviewing either of Dr. Maurer's last two reports, are entitled to even less weight.").

Alternatively, even if the ALJ had properly given significant weight Dr. Lee's opinion over others, the RFC still did not incorporate certain limitations recognized by Dr. Lee.  In response to Plaintiff's argument that the ALJ "wholly" relied on Dr. Lee's opinion, the Commissioner acknowledges that the RFC did not include the "postural, manipulative, and environmental limitations" ascribed by Dr. Lee. (R. Doc. 10 at 13).

Dr. Lee's assessment indicates that, due to Plaintiff's chronic obstructive pulmonary disease ("COPD"), Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, wetness, and humidity, and avoid all exposure to fumes, odors, dusts, gases, and poor ventilation.

---

[8] *Hendrickson v. Colvin*, No. 11-2197, 2013 WL 2285257, at *2 n.8 (M.D. Penn. May 23, 2013) ("Discogenic disease or degenerative disc disease is disease or degeneration of the intervertebral discs. . . . Degeneration of the disc is medically referred to as spondylosis. Spondylosis can be noted on x-ray tests or MRI scanning of the spine as a narrowing of the normal "disc space" between the adjacent vertebrae. . . . Radiculopathy is a condition where one or more nerves or nerve roots are affected and do not work properly. . . . Radiculopathy is a step beyond degenerative disc disease and severe cases may require surgical intervention.").

(Tr. 499).  This restriction is consistent with the record evidence documenting Plaintiff's long-standing issues with asthma and COPD. (Tr. 271-276, 327, 331-32, 335-41, 343, 345-46, 351, 673-75, 679).  Nonetheless, the ALJ failed to consider the effect that Plaintiff's asthma and COPD might have on her ability to perform light work, as is evident by his failure to incorporate any environmental restrictions into his residual functional capacity assessment. *See* SSR 85-15 ("Where an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions."); *Shelman*, 821 F.2d at 321-22 (remanding case where ALJ did not adequately consider the effect plaintiff's non-exertional limitations, which required him to work in environments "relatively free from atmospheric pollutants and irritants," had on his ability to perform sedentary work); *Warmoth v. Bowen*, 798 F.2d 1109, 1112 (7th Cir. 1986) (there must "be reliable evidence of some kind that would persuade a reasonable person that" plaintiff's environmental restrictions "do not significantly diminish the employment opportunities otherwise available").

Likewise, Dr. Lee determined that Plaintiff should never climb ladders, rope or scaffolds and should only occasionally kneel, crouch and crawl. (Tr. 497). As discussed above, Plaintiff's medical records consistently indicate a history of limited range of motion and sensory loss, with associated balancing issues (Tr. 370) (numbness in both feet); (Tr. 397) (Plaintiff fell down stairs); (Tr. 577-578) (decreased range of motion in lower extremities); (Tr. 571, 576) (decreased functional activities of daily living, strength and range of motion); (Tr. 579) (Plaintiff reports numbness in right lower extremity causing falls); (Tr. 631-34) (lumbar limited range of motion with forward flexion). *See Matthews v. Astrue*, No. 11-667, 2013 WL 5442265, at *7 (M.D. La. Sept. 27, 2013) (a finding of paresthesia indicates sensory loss); *Pannell v. Astrue*, No. 11-2385,

2012 WL 4341813, at *4 (N.D. Tex. Sept. 21, 2012).  This finding is also consistent with

Plaintiff's allegations of pain experienced while lacing her shoes, squatting and bending forward.

In addition, Dr. Lee found that Plaintiff was limited in her ability to reach in all

directions, including overhead. (Tr. 498).  This finding is also supported by Plaintiff's medical

history and her own allegations that she experiences pain while reaching overhead. (Tr. 462)

(upper extremity parethesias, limited abduction and decreased strength in left shoulder); (Tr.

631-634) (cervical limited motion with lateral rotation, facet atrophy, foraminal stenosis of

cervical spine, diminished disc space at C5-6); (Tr. 575-576) (Plaintiff reports bilateral upper

extremity numbness and tingling in right upper extremity); (Tr. 577-578) (paresthesias in the

right medial arm).

The ALJ did not address Dr. Lee's postural, manipulative and environmental limitations

in his decision.  It appears these portions of Dr. Lee's assessment were discounted, much like the

other functional limitations described by Plaintiff's physicians, to discredit Plaintiff's allegations

of pain and symptoms as inconsistent with the ALJ's preferred RFC.[9]  The ALJ was not at

---

[9] In assessing credibility, the ALJ must consider the entire record, including medical signs and laboratory findings and statements by the claimant and his or her treating or examining sources concerning the alleged symptoms and their effects. 20 C.F.R. § 404.1529(c)(1). Ultimately, the mere existence of pain is not an automatic ground for disability, and subjective evidence of pain does "not take precedence over conflicting medical evidence." *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).  Likewise, an individual's statements regarding pain and other symptoms alone are not conclusive evidence of disability and must be supported by objective evidence of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. at 96 (quoting 42 U.S.C. § 423(d)(5)(A)).

In making his RFC determination, the ALJ stated that Plaintiff alleged she could not sit or stand for longer than 30 minutes without alternating positions due to pain and the symptoms associated with her narcotic pain medications. (Tr. 50).  The Plaintiff also stated that she experienced pain when lacing her shoes. (Tr. 50).  Finally, the ALJ reports that Plaintiff alleged she can only lift between 5 to 7 pounds.  However, she claimed her ability to lift is difficult to determine as her lower back pain makes it very uncomfortable to squat and bend at the waist. (Tr. 50).

As part of his RFC determination, the ALJ found that Plaintiff's "determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 50).  The ALJ summarized the evidence but failed to indicate what evidence, if any, contradicted Plaintiff's allegations of pain and symptoms. *Giles v. Astrue*, 433 F. App'x 241, 249 (5th Cir. 2011) ("Of course the ALJ's determination decision cannot simply make conclusory statements regarding credibility

liberty to ignore these portions of Dr. Lee's opinion, which are consistent with the record evidence as a whole, and Plaintiff's own testimony, simply because they are inconsistent with his RFC determination. *See Loza*, 219 F.3d at 393 (the ALJ is not free to "'pick and choose' only the evidence that supports his position.").

Turning to the other medical evidence of record, the ALJ's decision discusses Plaintiff's June 2009 MRI results. However, the ALJ's brief discussion notes that cord compression was not found in Plaintiff's cervical and thoracic spine, yet neglects to mention that "considerable subforaminal spondylosis" was found in the lumbar spine. (Tr. 51, 365). Moreover, the ALJ's decision does not reference Dr. Smith's finding of nerve root compression and his opinion "that the foraminal disk herniation is at least a contributor to much of her pain especially the leg, buttock and hip pain." (Tr. 684). *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper").

The record further demonstrates that the ALJ failed to consider Plaintiff's impairments, collectively, throughout the disability determination process. In determining whether a plaintiff's "physical or mental impairments are of a sufficient medical severity as could be the basis of eligibility under the law, the ALJ is required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Loza*, 219 F.3d at 393. The Social Security Administration's Regulations require the ALJ to consider the "combined impact of the impairments . . . throughout the disability determination process." *Id.* (quoting 20 C.F.R. § 404.1523); *see also Prince v.*

---

and must contain specific reasons for the finding on credibility, supported by the evidence in the case record . . . .") (quotations omitted). Because the Court finds that the ALJ rejected certain medical opinions without providing sufficient justification, thereby resulting in a RFC not supported by substantial evidence, the Court is incapable of conducting a meaningful review of the ALJ's credibility determination in the context of this RFC.

*Barnhart*, 418 F. Supp. 2d 863, 867 (E.D. Tex. 2005) ("Failure to consider combined impact of multiple impairments constitutes a failure to apply correct principles of law.").

At step two, the ALJ found that Plaintiff's migraines were a severe impairment. Nonetheless, the ALJ failed to incorporate the functional restrictions associated with Plaintiff's migraines into his RFC assessment.  In December of 2010, Dr. Tessier noted that Plaintiff's migraines began to occur as often as three times per week and that while "in the throes of a migraine" Plaintiff "would be incapable of performing any work." (Tr. 231).  Dr. Tessier opined that Plaintiff's migraines persisted more frequently due to degenerative changes. (Tr. 231).  This evidence is not contradicted by the record.

The ALJ committed reversible error by compartmentalizing Plaintiff's impairments and ignoring medical evidence of her functional limitations.   Consequently, the ALJ's determination that Plaintiff had the residual functional capacity to perform the full range of light work without restriction is not supported by substantial evidence. *See, e.g., Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987) ("The well-settled rule in this Circuit is that . . . the ALJ must analyze both the disabling effect of each of the claimant's ailments and the combined effect of all of these impairments." (quotations omitted)); *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir. 1974) (remanding case where "the report of the Appeals Council tends to fractionalize the several ailments and to treat each in isolation").

In summary, the ALJ failed to explain the weight given to the opinion of Dr. Tessier and gave inconsistent weight to Dr. Burdine's.  Even if the ALJ gave significant weight to the opinion of Dr. Burdine and his opinion was arguably sufficient to reject Dr. Tessier's, the RFC is still inconsistent with Dr. Burdine's medical findings.  Finally, the opinion of Dr. Lee, a non-examining consultant, contradicts those of the treating and examining physicians and could only

have accounted for the medical evidence prior to September 15, 2009.  Even assuming that "significant weight" was appropriately given to Dr. Lee's opinion, the RFC still failed to incorporate certain limitations specifically opined by Dr. Lee.  For these reasons, substantial evidence does not support the ALJ's RFC determination and resulting conclusion that Plaintiff was not disabled.

## VI.  RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that the ALJ's decision be **VACATED** and Plaintiff's case **REMANDED** for further administrative proceedings consistent with this opinion.

Signed in Baton Rouge, Louisiana, on February 5, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**